FILED

2008 Jun-11  PM 03:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DERECK RUSSELL,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **CASE NO.  2:06-CV-2342-RDP** |
| | } | |
| **ALABAMA  DEPARTMENT  OF** | } | |
| **REHABILITATION SERVICES,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OPINION**

This case is before the court on Defendant's Motion for Summary Judgment (Doc. # 14) filed December 17, 2007.  The motion was under submission to this court, without any opposition from Plaintiff, as of February 12, 2008.[1]  For the reasons outlined below, the court finds that Defendant's motion is due to be granted.

**I.     Legal Standards for Evaluating a Summary Judgment Motion**

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R .CIV. P. 56.  All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the nonmovant.  *See Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,*

---

[1] Because Plaintiff is proceeding *pro se*, the court was required to give Plaintiff "express, ten-day notice of the summary judgment rules, of his right to file affidavits or other materials in opposition to the motion, and of the consequences of default."  *McBride v. Sharpe*, 981 F.2d 1234, 1236 (11th Cir. 1993) (quotation and citation omitted).  The court provided that notice to Plaintiff on January 22, 2008, and directed him to file any opposition to Defendant's motion on or before February 12, 2008.  (Doc. #16).  As of the date of entry of this order and opinion, the court has received no response from Plaintiff to either Defendant's motion or to the court's order.

477 U.S. 242, 248 (1986).  Although the nonmovant is entitled to justifiable inferences from the undisputed facts, he cannot rest upon his pleadings:

> When a motion for summary judgment is made and supported as provided in this rule, and adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).

A plaintiff in an employment discrimination case maintains the ultimate burden of proving that the adverse employment decision was made because of intentional discrimination.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 134 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 509–12 (1993); *Nix v. WLCY Radio/Rahall Communications*, 738 F.2d 1181, 1184 (11th Cir. 1984).  Although the Supreme Court previously established the basic allocation of burdens and order of proof in a disparate treatment case,  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Texas Dep't. of Comty. Affairs v. Burdine*, 450 U.S. 248 (1981), as modified by *Desert Palace v. Costa*, 539 U.S. 90 (2003), that allocation scheme applies only in cases, as here, where there is no direct evidence of discrimination, *Grigsby v. Reynolds Metals Co.*, 821 F.2d 590, 595 (11th Cir. 1987).

Under the *McDonnell Douglas/Burdine* scheme, a plaintiff first has the burden of proving by a preponderance of evidence a *prima facie* case of discrimination.  Second, once the plaintiff proves a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision.  Finally, if the defendant carries its burden, the plaintiff must *either* prove by a preponderance of the evidence that the legitimate reasons offered

2

by the defendant are merely a pretext for discrimination *or* present sufficient evidence, of any type, for a reasonable jury to conclude that discrimination was a "motivating factor" for the employment action, even though defendant's legitimate reason may also be true or have played some role in the decision. *McDonnell Douglas*, 411 U.S. at 802–05; *Burdine*, 450 U.S. at 252–54; *Desert Palace*, 539 U.S. at 101–02. The court is aware that the summary judgment rule applies in job discrimination cases just as in other cases. *Chapman v. AI Transport*, 229 F.3d 1012, 1025 (11th Cir. 2000) (en banc) (rejecting an earlier, contrary general rule and emphasizing that no thumb is to be placed on either side of the scale).

## II. Relevant Undisputed Facts[2]

On August 8, 2005, Plaintiff was appointed to the State Merit System position of Rehabilitation Employment Specialist I. (Doc. # 15, Ex. A). At that time, he received and acknowledged having read the Alabama Department of Rehabilitation Services' Employee Handbook. (Doc. # 15, Exs. B, C). Plaintiff was trained to enter data into a computer database that documented all the work he was required to perform. (Doc. # 15, Ex. N, Ex. F, pp. 46, 179). As a State Merit System employee, Plaintiff was employed for an initial probationary period to determine if he could perform his duties satisfactorily (Doc. # 15, Ex. D), and he was informed that he would be appraised during his probationary period based upon the performance of seven responsibilities. (Doc. # 15, Ex. E, Ex. F, pp. 137-39).

On November 23, 2005, Plaintiff's supervisors rated his performance and determined that he was not meeting standards with regard to two of his listed responsibilities: (1) Responsibility 1,

---

[2] The court has "resolve[d] all reasonable doubts about the facts in favor of the non-movant, and draw[n] all justifiable inferences in his favor." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993) (internal quotations omitted).

which requires developing, maintaining, and coordinating employer accounts; and (2) Responsibility 4, which involves maintaining trackable and timely records and files.  (Doc. # 15, Ex. G, Ex. F, pp. 139-50).  One of Plaintiff's supervisors attached written comments to the written appraisal that explained how Plaintiff could improve his performance with respect to those two responsibilities.  Plaintiff chose not to attach any written comments to this written appraisal.  (Doc. # 15, Ex. G, Ex. F, pp. 139-50).

On January 11, 2006, Jim Donald, one of Plaintiff's supervisors, met with Plaintiff to discuss his work performance.  (Doc. # 15, Ex. F, pp. 57-69, Ex. K, pp. 5-12).  After Plaintiff suggested that his assistant, Stella Ashley, an African-American female, was partly to blame for his performance deficiencies, Donald invited Ashley to join the meeting.  (Doc. # 15, Ex. F, pp. 57-69, Ex. K, pp. 5-12).  During the course of the meeting, Donald used the term "boy."  (Doc. # 15, Ex. F, pp. 57-69, Ex. K, pp. 5-12).  Plaintiff claims that Donald referred to him as "boy" multiple times during the meeting.  (Doc. # 15, Ex. F, pp. 59, 63-66).[3]

On January 20, 2006, Plaintiff 's supervisors recommended that Plaintiff not be retained in his position.  (Doc. # 15, Ex. H).   On January 26, 2006, Plaintiff complained by letter to Kim Boswell, Human Resource Development Director, that he was in a hostile working environment based upon the comments made by Donald during their January 11, 2006 conversation.  (Doc. # 15, Ex. I).   At that time, Donald was removed as Plaintiff's supervisor, and Plaintiff was transferred to the supervision of Pam Mobley.  (Doc. # 15, Ex. L).

---

[3] Testimony from Donald and Ashley disputes the number of times "boy" was used during the conversation. (Doc. # 15, Ex. F, pp. 57-69, Ex. K, pp. 5-12).  For the purposes of this motion, the court views the facts according to Plaintiff's testimony's about what was said during the meeting.

On January 27, 2006, Plaintiff's supervisors appraised his performance and determined that he was only partially meeting standards in the seven responsibilities he had been given as a probationary employee.  Based upon this appraisal, Commissioner Shivers recommended that Plaintiff 's employment continue in probation status.  (Doc. # 15, Ex. J)

Patient Accounts Manager Tina Howell was assigned to investigate Plaintiff 's complaint of hostile work environment. On March 20, 2006, after conducting interviews of several employees, Howell submitted a written report of her investigation to Assistant Commissioner Jim Harris, III. (Doc. # 15, Ex. K).  Plaintiff agrees that Howell's rendition of her discussion with him during the investigation is accurate.  (Doc. # 15, Ex. K, pp. 5-6, Ex. F, p. 131-32).  Thereafter on March 24, 2006, after reviewing the report, Commissioner Steve Shivers found that although Donald "inappropriately referred to adult employees of the department as boys and girls," Plaintiff's complaint did not rise "to the level of the severe and pervasive discriminatory actions that are required to prove the existence of a hostile work environment." (Doc. # 15, Ex. L).

On April 18, 2006, another one of Plaintiff 's supervisors, Peggy Anderson, submitted information to the Commissioner regarding Plaintiff's performance during his original and extended probationary periods.  (Doc. # 15, Ex. M).  Anderson also prepared a summary of the training that Plaintiff had received throughout his employment with the Alabama Department of Rehabilitation Services.  (Doc. # 15, Ex. N).  Thereafter on April 21, 2006, Commissioner Shivers informed Plaintiff by letter that he was terminated due to his failure to meet standards, failure to timely enter case material, failure to learn how to accurately enter documentation and report activities, and failure to perform at a level commensurate with other employees in the same classification. (Doc. # 15, Ex. O).

5

On May 1, 2006, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging discrimination based upon race and retaliation. (Doc. # 15, Ex. P). On November 3, 2006, Plaintiff filed this lawsuit *pro se*.

## III.    Applicable Substantive Law and Analysis

Plaintiff's complaint asserts claims under Title VII and 42 U.S.C. § 1981 for hostile environment race discrimination, disparate treatment on the basis of race in failing to properly train him, and retaliation by terminating his employment. Both Title VII and § 1981 utilize the same analytical framework and requirements of proof. *See Standard v. A.B.E.L. Servs. Inc.*, 161 F.3d 1318, 1330 (11th Cir. 1998). Accordingly, the court's analysis focuses on the substance of Plaintiff's three claims, addressed in turn below.

### A.    Hostile Environment in the Form of Racial Harassment

Plaintiff claims that he was subjected to a racially hostile work environment because his supervisor referred to him as "boy" multiple times during the course of one meeting. In order to establish a *prima facie* case of hostile environment in the form of racial harassment, Plaintiff must demonstrate: (1) he belongs to a protected group; (2) he has been subjected to unwelcome harassment; (3) the harassment was based on his race; (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a racially abusive work environment; and (5) a basis for holding the employer liable. *See Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (en banc).

The Supreme Court has made clear that a *prima facie* showing of a hostile work environment arises only where the racial harassment is so "severe or pervasive" as to "alter the conditions of employment and create an abusive working environment." *Faragher v. City of Boca Raton*, 524 U.S.

775, 786 (1998) (citation omitted). The standard is "sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher*, 524 U.S. at 788 (citation omitted). For example, offhand comments, isolated incidents (unless extremely serious), and other similar tribulations of the workplace will not amount to changes altering the terms and conditions of employment. *Faragher*, 524 U.S. at 788.

Furthermore, in order to be actionable under the statute, the work environment must be offensive on both an objective[4] and a subjective level. That is, the environment must be "one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 787. This is a question to be determined with regard to the totality of the circumstances. *Henson v. Dundee*, 682 F.2d 897, 904 (11th Cir. 1982). The Eleventh Circuit has specified the following factors to consider in determining whether an environment is hostile: (1) the frequency of the discriminatory conduct, (2) the severity of the discriminatory conduct, (3) whether the conduct is threatening or humiliating or a mere offensive utterance, and (4) whether the conduct unreasonably interferes with the plaintiff's performance at work. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1521-22 (11th Cir. 1995).

In this case, the undisputed facts indicate that the work atmosphere was neither "charged with racial hostility" nor abusive. *Edwards*, 49 F.3d at 1521. The Supreme Court has repeatedly emphasized that this cause of action is limited to extreme work conditions. *See, e.g., Faragher*, 524

---

[4] The objective evaluation is based on a "reasonable person" standard. *Watkins v. Borden*, 105 F.3d 1344, 1355-56 (11th Cir. 1997) (affirming the use of the "reasonable person" standard in a hostile work environment claim where the plaintiff argued that the court should have applied a more contextual standard such as "a reasonable African-American person.")

U.S. at 788; *Oncale*, 523 U.S. at 81.   Here, however, Plaintiff's hostile work environment claim is based upon his supervisor's use of the term "boy" during one meeting that took place on one day during the eight months that he was employed by Defendant. (Doc. # 15, Ex. F, p. 59).  Regardless of how many times the word "boy" was uttered during the meeting, Plaintiff admitted that after that meeting took place, his supervisor never again used derogatory terms of any kind.  (Doc. # 15, Ex. F, p. 95-98).

On these facts, the record does not demonstrate that Plaintiff was exposed to sufficiently egregious conduct to support a hostile environment claim.  Isolated remarks - even assuming they are racially charged - made during the course of one meeting are not in themselves sufficient to establish a claim of a racially hostile work environment.   Indeed, the Eleventh Circuit has made clear that the "'mere utterance of an ethnic or racial epithet which engenders offensive feelings in an employee' does not affect the terms, conditions, or privileges of employment to a sufficiently significant degree" so as to constitute an actionable hostile work environment. *Henson v. City of Dundee*, 682 F.2d 897, 904 (11th Cir. 1982), *quoting Rogers v. EEOC*, 454 F.2d 234, 238 (5th Cir. 1971).  Thus, summary judgment is appropriate on this claim because Plaintiff's allegations fall below the *Mendoza* line.  *Mendoza*, 195 F.3d at 1247-48.

### B.    Disparate Treatment

Plaintiff also claims that because of his race, he was treated differently than other employees with respect to certain conditions of his employment.  To establish a *prima facie* case of disparate treatment, Plaintiff must demonstrate:  (1) he is a member of a protected class; (2) he was subjected to an adverse employment action; (3) his employer treated similarly situated Caucasian employees more favorably; and (4) he was qualified to do the job.  *Maniccia v. Brown*, 171 F.3d 1364, 1368

(11th Cir. 1999).  Plaintiff's testimony reveals that his disparate treatment claim is based upon complaints that improper training rendered him unable to answer certain persons' questions at a meeting and that he was asked to do certain job tasks that his predecessor had not been asked to do. (Doc. # 15, Ex. F, pp. 41-48, 169-71).

Construing the Rule 56 evidence in the light most favorable to Plaintiff, the court finds that Plaintiff has failed to establish a *prima facie* case because he has not shown that he suffered an adverse employment action. Whether Plaintiff's disparate treatment claim is characterized as the failure to train him in the same manner as his predecessor, or the requirement that he perform additional tasks that were not required of his predecessor, there is no evidence that he has suffered an adverse employment action.  Indeed, Plaintiff's allegations are little more than bald assertions that his job turned out to be a little different than the job performed by his predecessor; there is simply no evidence that Plaintiff's employment was materially altered because of his race.  Indeed, Plaintiff has not opposed summary judgment and therefore has presented no additional evidence or argument to explain how these complaints rise to the level of a cognizable claim.

It is axiomatic that an "adverse employment action is an indispensable element of a Title VII plaintiff's case." *Davis v. Town of Lake Park*, 245 F.3d 1232, 1246 (11th Cir. 2001).  For an adverse employment action to have occurred, there must have been a "serious and material change in the terms, conditions, or privileges of employment."  *Davis*, 245 F.3d at 1239.  An "employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Davis*, 245 F.3d at 1239.  Not "every unkind act" meets that threshold, *Davis*, 245 F.3d at 1238, and based upon this record, nothing suggests that Plaintiff's grievances do.

9

Accordingly, because Plaintiff has not established a *prima facie* case of disparate treatment, summary judgment in favor of Defendant is appropriate on this claim as well.

### C.    Retaliation

Finally, Plaintiff claims that his employment was terminated in retaliation for his complaints of discrimination.  A prima facie case of retaliation is established when a plaintiff demonstrates: (1) that he engaged in statutorily protected activity; (2) that an adverse employment action occurred; and (3) that the adverse action was causally related to his protected activities.  *Farley v. Nationwide Mutual Ins. Co.*, 197 F.3d 1322, 1336 (11th Cir. 1999); *see also Standard*, 161 F.3d at 1330 (noting that Title VII and § 1981 have the same requirements of proof and use the same analytical framework) and *Shields v. Fort James Corp.*, 305 F.3d 1280, 1282 (11th Cir. 2002) (noting that courts properly apply cases from Title VII & § 1981 interchangeably).  The Eleventh Circuit has noted that the protection under Title VII "is not limited to individuals who have filed formal complaints, but extends as well to those . . . who informally voice complaints to their superiors." *Rollins v. State of Fla. Dept. of Law Enforcement*, 868 F.2d 397, 400 (11th Cir. 1989).

Viewing the facts in the light most favorable to Plaintiff, the court finds that he did engage in protected conduct when he informally voiced complaints to his superiors on January 20, 2006 regarding Donald's use of the word "boy" and that he did suffer an adverse employment action when he was terminated nearly three months later.  Accordingly, the court will assume, without deciding, that Plaintiff's protected conduct was causally connected to his termination, thus establishing his *prima facie* case.

Once a *prima facie* case of retaliation has been made, the defendant must come forward with a legitimate, non-discriminatory reason for the adverse employment decision. *St. Mary's Honor Cntr*

*v. Hicks*, 509 U.S. 502, 507 (1993).  Because a plaintiff bears the burden of proving pretext, after defendant has articulated a legitimate, non-discriminatory reason for the termination, plaintiff must present significantly probative evidence proving pretext to avoid summary judgment.  That is, the plaintiff must establish evidence from which a reasonable trier of fact would disbelieve rather than disagree with defendant's articulated legitimate, nonretaliatory reason for the adverse employment action.  *Combs v. Plantation Patterns*, 106 F.3d 1519, 1543 (11th Cir. 1997).  It is Plaintiff's failure to meet this burden that is fatal to his retaliation claim.

In this case, the Rule 56 record is devoid of any evidence that retaliation is the real reason why Plaintiff's employment was terminated.  The reasons for that termination, which are outlined in Commissioner Shivers' letter of April 21, 2006, include Plaintiff's failure to meet standards, failure to timely enter case material, failure to learn accurate documentation and reporting, failure to perform at a level commensurate with other similar employees, failure to set up joint visits with new business accounts, failure to follow up on existing business accounts, failure to initiate site visits with other rehabilitation employment specialists, and the falsification of computer records designed to create the appearance that Plaintiff was doing a better job than he was actually performing.  (Doc. # 15, Exs. J, O).  Moreover, it is undisputed that even before Plaintiff put his complaints in writing about the use of the word "boy," his supervisors had recommended that Plaintiff not be retained in his position.  (Doc. # 15, Exs. H, I).  Plaintiff has not established that retaliation did indeed motivate Defendant's decision to terminate his employment, nor has he produced any evidence - much less sufficient evidence - to allow a rational trier of fact to disbelieve Defendant's proffered legitimate reasons and make a finding of illegal retaliation.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993); *Abel v. Dubberly*,

11

210 F.3d 1334, 1339 (11th Cir. 2000); *Alexander v. Fulton County*, 207 F.3d 1303, 1336 (11th Cir. 2000); *Combs*, 106 F.3d at 1529-38 (interpreting *Hicks* and the post-*Hicks* case law); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 920-21 (11th Cir. 1993). Thus, Defendant is due judgment as a matter of law on Plaintiff's retaliation claim.

## IV.   Conclusion

For the reasons stated above, the court finds that Defendant's motion for summary judgment is due to be granted.  A separate order will be entered.

**DONE** and **ORDERED** this _____11th_____ day of June, 2008.

**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE